1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALISON M. ABELS,

       Plaintiff,                  No. 2:11-cv-2904-JAM-EFB PS

      vs.

BANK OF AMERICA N.A.; U.S. BANK
NATIONAL ASSOCIATION; MORTGAGE
ELECTRONIC REGISTRATIONS
SYSTEMS ("MERS"); RECONTRUST
COMPANY, N.A; CHARMAINE
DUDEVOIR-BOTTINI and all persons
unknown claiming any legal or equitable
right, title estate, lien or interest in the
property described in the complaint adverse    ORDER AND
to plaintiff's title or any cloud on Plaintiff's   FINDINGS AND RECOMMENDATIONS
title thereto and Does 1 through 100 inclusive,

       Defendants.

_____/

This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to

Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Defendants

Bank of America, N.A., U.S. Bank National Association, Mortgage Electronic Registration

Systems, Inc. ("MERS"), and ReconTrust Company, N.A. move to dismiss plaintiff's first

amended complaint.  Dckt. No. 31.  For the reasons stated herein, the motion to dismiss must be

granted with leave to amend.

1

I.      BACKGROUND

On May 12, 2012, plaintiff, who is proceeding pro se, filed an amended complaint alleging various state and federal claims related to property located at 3198 Log Cabin Court, Placerville, CA 95667 (the "subject property").  First Am. Compl. ("FAC"), Dckt. No. 26. Plaintiff's first amended complaint alleges eight claims for relief: (1) violation of the civil RICO statute, 18 U.S.C. §§ 1961(5), 1962(b)-(d); (2) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; (3) violation of California Business and Professions Code section 17200 *et seq.*; (4) violation of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605; (5) constructive fraud; (6) fraudulent inducement; (7) violation of California Civil Code section 2932.5; and (8) unconscionability.  *Id.*

Plaintiff alleges that defendants "have conspired . . . to file and record fraudulent documents resulting in the unlawful foreclosure action against" the subject property; specifically, "[d]efendants filed a fraudulent and defective Notice of Default on December 12, 2010."  *Id.* at 1, ¶¶ 1-2.[1]  According to plaintiff, she refinanced her loan for the subject property with Countrywide Home Loans, Inc. ("Countrywide") as the lender, with defendant ReconTrust as the Trustee listed on the Deed of Trust, and with MERS listed as the beneficiary.  *Id.* at 11, ¶ 45; *id.* at 4, ¶ 6; *id.* at 4, ¶ 4.  Plaintiff alleges that defendant, Bank of America N.A. is the successor in interest to Countrywide and "recorded fraudulent robo-signed documents in the El Dorado County Recorder's office and used fraudulent documents to affect an unlawful foreclosure sale." *Id.* at 3, ¶ 2.  According to plaintiff, defendant U.S. Bank National Association . . . is also listed as Trustee," and defendant Charmaine Dudevoir-Bottini ("Bottini") "was a Loan Officer [for Countrywide] who sold Plaintiff the mortgage at issue."  *Id.* at 3, ¶ 3; *id.* at 4, ¶ 7.

Plaintiff alleges that "no interest in Plaintiff's Mortgage Notes, Deeds of Trust or Property was ever legally transferred to any of the parties in the chain and that the Defendants

_____

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

are in effect straw men, and parties without any standing before this Court to assert legal rights with respect to this contractual transaction." *Id.* at 8, ¶ 28.  According to plaintiff, "none of the named Defendants are a 'person entitled to enforce' the security interest under the Notes and the Deeds of Trust, as defined in California Commercial Code § 3301." *Id.* at 12, ¶ 51.  "No legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was ever effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee, or beneficiary of Plaintiff's Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property." *Id.* at 13, ¶ 53.  According to plaintiff, the named defendants "engaged in a civil conspiracy by their secreted nature of the misleading deeds alleged herein, the roles and identities of the various entities that purportedly were processing the Loan at any given time, and the transfers of the Loan documents and negotiable instruments that are the subject of this action." *Id.* at 14, ¶ 60.

Plaintiff also alleges that during the September 2005 refinance process, defendant Bottini, who represented that she was a loan agent for Countrywide and who "directed Plaintiff's re-financing of the Property," made numerous false and/or misleading representations to plaintiff in order to induce plaintiff to accept the loan. *Id.* at 9-11, ¶¶ 36-45.  Specifically, "Bottini advised Plaintiff that she could refinance to eliminate the mortgage insurance premium and offered Plaintiff a Home Equity Line of Credit ("HELOC") through an adjustable rate mortgage" when she "knew or should have known that this adjustable rate loan would lead to foreclosure because Plaintiff would not have qualified for the payments when the adjusted rate matures." *Id.* at 10, ¶ 37.  Bottini also advised plaintiff "that she could get a fixed loan . . . at a fixed rate loan interest for 30 years like the previous loan," but plaintiff was given an adjustable loan. *Id.* at 10, ¶ 38.  "Bottini further advised Plaintiff that if the loan ever became unaffordable, she could simply refinance it into affordable loan," when Bottini "knew or should have known this information was false and misleading." *Id.* at 10, ¶ 40.  Plaintiff further alleges that "[t]he facts ////

3

1  surrounding this loan transaction were purposefully hidden to prevent Plaintiff from discovering

2  the true nature of the transaction and the documents involved therein." *Id.* at 10-11, ¶ 41.

3          According to plaintiff, she "was not given a copy of any of the loan documents prior to

4  closing as required." *Id.* at 11, ¶ 42.  Instead, "[a]t closing, Plaintiff was only given time enough

5  to sign the documents.  The notary did not explain the loan documents nor was Plaintiff allowed

6  to review or make any marks other than signature or initials on the documents.  Plaintiff was

7  simply told to sign, initial and date the documents provided by the notary." *Id.*  Plaintiff further

8  contends that she "did not receive the required notice of cancellation properly prepared for the

9  first mortgage even though the notice of cancellation was listed in Countrywide Home Loans

10  package contents." *Id.* at 11, ¶ 44.  Plaintiff alleges that when the loan was completed, she "did

11  not receive the required properly prepared documents and disclosures, including, but not limited

12  to the TILA disclosure, and the required number of copies of the Notice of Right to Cancel

13  stating the date that the rescission period expires." *Id.* at 13, ¶ 55.  She also alleges that

14  Countrywide also failed to disclose the amount "financed" and the "finance charge" in

15  connection with the loan.  *Id.* at 13-14, ¶¶ 57-58.

16          Plaintiff further alleges that after the refinance, Countrywide "began demanding

17  mortgage payments" but "did not give Plaintiff notice that it acquired servicing rights, as

18  required under 12

19  U.S.C. 2605c." *Id.* at 12, ¶ 47.  Plaintiff contends that her "Complaint filed on November 3,

20  2011 contained at ¶ 49 [what was intended] to be a Qualified Written Request under RESPA

21  ("QWR") because plaintiff had knowledge as to the alleged note holder, Harbor View Trust

22  2005-16 from the Notice of Default, recorded in the El Dorado County Record on December 12,

23  2010." *Id.* at 12, ¶ 49.  Plaintiff alleges that she "has not received the response to the QWR

24  although the request was made over 60 days [ago]." *Id.* at 12, ¶ 50.

25          Plaintiff contends that "[t]he misrepresentations and all allegations stated [in the

26  complaint] were discovered within on or around December 20, 2010.  She contends that the

4

statute of limitations has not expired because the loan has not been consummated and therefore Plaintiff is not contractually obligated." *Id.* at 14, ¶ 62.

Defendants Bank of America, N.A., U.S. Bank National Association, Mortgage Electronic Registration Systems, Inc. ("MERS"), and ReconTrust Company, N.A. now move to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Dckt. No. 31.  Plaintiff opposes the motion.  Dckt. Nos. 33, 35.

II.     MOTION TO DISMISS

A.   Rule 12(b)(6) Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2] It does not appear from the docket that defendant Bottini or the Doe defendants have been timely served in this action, as required by Federal Rule of Civil Procedure ("Rule") 4(m) and this court's previous orders.  Nor did plaintiff file a proof of such service as required by Rule 4(*l*)(1) and Eastern District of California Local Rule 210(b).  As a result, those defendants could be dismissed for failure to timely serve pursuant to Rule 4(m) and/or for failure to comply with the Rules and court's orders pursuant to Rule 41 and/or Local Rule 110.  However, because plaintiff's entire first amended complaint will be dismissed, the service issues will not be addressed at this time.  Nonetheless, plaintiff is admonished that any defendants named in a second amended complaint must be timely and effectively served in accordance with the Federal Rules of Civil Procedure, and proof of such service must be filed with the court. *See also* E.D. Cal. L.R. 183 ("Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure and by these Local Rules."); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal.").

liable for the misconduct alleged." *Id.* Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs*., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithem*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the courts liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs*., 798 F.2d 1279, 1282 (9th Cir. 1986).

1      B.  Plaintiff's Claims

2          1.  Civil RICO

3          Plaintiff alleges that defendants violated 18 U.S.C. §§ 1961(5), 1962(b), 1962(c), and

4   1962(d).  FAC at 15-19.  Specifically, plaintiff alleges that "all Defendants did acquire and/or

5   maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who

6   were associated in fact and who did engage in, and whose activities did affect, interstate and

7   foreign commerce . . . ."  *Id.* at 15, ¶ 2; *id.* at 17, ¶ 11; *id.* at 18, ¶ 17.  Plaintiff further alleges

8   that "all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of

9   the affairs of said RICO enterprise through a pattern of racketeering activity . . . ."  *Id.* at 17,

10  ¶ 12; *id.* at 18, ¶ 18.  "Plaintiff further alleges that all Defendants did commit two (2) or more of

11  the offenses itemized above in a manner which they calculated and premeditated intentionally to

12  threaten continuity, i.e. a continuing threat of their respective racketeering activities . . . ."  *Id.* at

13  16, ¶ 6; *id.* at 17, ¶¶ 13-14; *id.* at 18, ¶¶ 19-20.  According to plaintiff, "[e]vidence that

14  Defendant Countrywide committed the predicate acts was established by the United States

15  Department of Justice (DOJ) investigation into Countrywide's practice of discrimination in loan

16  origination for primarily of African Americans and Hispanics predominately in California and

17  Illinois.  Plaintiff is African American and the loans were originated in California."  *Id.* at 15, ¶

18  4.  Plaintiff alleges that she "has been harmed" by the violations.  *Id.* at 19, ¶ 23.

19         Defendants move to dismiss plaintiff's RICO claims, arguing that the claim fails because

20  plaintiff fails to sufficiently allege the existence of a RICO enterprise and fails to allege a pattern

21  of racketeering activity.  Dckt. No. 31 at 12-13.[3]

22         To state a civil RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3)

23  through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to

24

25         [3] Defendants also argue generally that all of plaintiff's claims should be dismissed
    because plaintiff has failed to allege tender.  Dckt. No. 31 at 11-12.  However, because plaintiff's
    amended complaint must be dismissed on alternate grounds, that argument need not be addressed
26  herein.

plaintiff's business or property.  *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557 (9th Cir.

2010); *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008); *Grimmett v. Brown*, 75 F.3d

506, 510 (9th Cir. 1996).  The alleged enterprise must exist "separate and apart from that

inherent in the perpetration of the alleged [activity]."  *Chang v. Chen*, 80 F.3d 1293, 1300-01

(9th Cir. 1996).  A "pattern of racketeering activity" means at least two criminal acts enumerated

by statute.  18 U.S.C. § 1961(1), (5) (including, among many others, mail fraud, wire fraud, and

financial institution fraud).  Those so-called "predicate acts" under RICO, if based on a theory of

fraudulent conduct, must be alleged with specificity in compliance with Rule 9(b).  *Schreiber*

*Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 2004); *see also*

*Lancaster Community Hospital v. Antelope Valley Hospital Dist.*, 940 F.2d 397, 405 (9th Cir.

1991) (holding with respect to the predicate act of mail fraud that a plaintiff must allege with

"particularity the time, place, and manner of each act of fraud, plus the role of each defendant in

each scheme"); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir.

1988); *Pineda v. Saxon Mortgage Services*, 2008 WL 5187813, at *4 (C.D. Cal. Dec. 10, 2008)

("It is not enough for [plaintiff] to rely on mere labels and conclusions" to establish a RICO

claim but rather, plaintiff must give each defendant notice of the particular predicate act it

participated in and must allege each predicate act with specificity).

       Here, the allegations found in the amended complaint with respect to a civil RICO claim

are inadequate.  The amended complaint offers no factual allegations in support of the civil

RICO claim, and certainly no specific facts sufficient to meet the heightened pleading

requirements under Rule 9(b).  Instead, the amended complaint offers mere conclusory

allegations.  As noted above, predicate acts must be described specifically and in relation to each

defendant's particular, alleged illegal conduct.  Plaintiff's amended complaint fails to set forth

these specifics.  Accordingly, plaintiff's civil RICO claim must be dismissed.  Although it

appears amendment would likely be futile, the court cannot say that "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief," plaintiff will be given leave to amend her civil RICO claims to cure those deficiencies. *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (when evaluating the failure to state a claim, the complaint of a pro se plaintiff may be dismissed "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"). Accordingly, the dismissal of this claim should be with leave to amend.

### 2. Truth in Lending Act

With regard to the Truth in Lending Act ("TILA"), plaintiff alleges only that defendants violated TILA, FAC at 19, ¶ 25; that defendants failed to provide her "with [the] RESPA required notice of transfer," *id.* at 19, ¶ 26; and that "[d]efendants are not entitled to foreclosure procedures, which Defendants are not entitled to initiate, participate in or conduct," *id.* at 19, ¶ 28. In the "factual allegations" section of the complaint, plaintiff also alleges that during the refinance process Bottini made a variety of misrepresentations on behalf of Countrywide, and plaintiff was not given a copy of the loan documents prior to closing, those documents were not explained to her, and she was not allowed to review them when signing them. *Id.* at 9-11, ¶¶ 36-45. Plaintiff further contends that she was not given "the required properly prepared documents and disclosures" after closing either, and that Countrywide also failed to disclose the amount "financed" and the "finance charge" in connection with the loan. *Id.* at 13-14, ¶¶ 55, 57-58.

Defendants move to dismiss plaintiff's TILA claim, arguing that the claim is barred by the statute of limitations, the loan at issue is not subject to TILA since the property is not plaintiff's primary residence, and the claim fails to allege sufficient facts. Dckt. No. 31 at 13-15.

TILA is intended to protect consumers in credit transactions by requiring "meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). A lender's violation of TILA allows the borrower to seek damages or to rescind a consumer loan secured by the borrower's primary dwelling. *Copeland v. Lehman Brothers Bank*, FSB, 2010 WL 2817173, at *5 (S.D. Cal. July 15, 2010). However, a plaintiff's damage claims relating to improper disclosures under TILA

9

1   are subject to a one-year statute of limitations, 15 U.S.C. § 1640(e), which runs from the time the

2   loan transaction is consummated.  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986); *see*

3   *also Meyer*, 342 F.3d at 902 (failure to make the required disclosures under TILA occurs at the

4   time the loan documents were signed).  Rescission claims under TILA "shall expire three years

5   after the date of the consummation of the transaction or upon the sale of the property, whichever

6   occurs first."  15 U.S.C. § 1635(f).  The right to rescission under TILA expires three days after

7   the necessary disclosures are provided to the borrower.  15 U.S.C. § 1635(a).

8          Although equitable tolling of TILA claims may be appropriate "in certain

9   circumstances," and can operate to "suspend the limitations period until the borrower discovers

10   or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the

11   TILA action," *King*, 784 F.2d at 914–15, when a plaintiff fails to allege facts demonstrating that

12   he could not have discovered the alleged violations by exercising reasonable diligence, dismissal

13   is appropriate.  *Meyer*, 342 F.3d at 902–03 (refusing to apply equitable tolling to TILA claim

14   because the plaintiff was in full possession of all loan documents and did not allege any

15   concealment of loan documents or other action that would have prevented discovery of the

16   alleged TILA violations); *see also Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir.1996)

17   (finding that plaintiff was not entitled to equitable tolling of her TILA claim because "nothing

18   prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and

19   TILA's statutory and regulatory requirements").

20          Here, the refinance at issue occurred in 2005, but this action was not filed until

21   November 3, 2011.  Additionally, although plaintiff alleges that she did not discover the

22   misrepresentations until December 20, 2010, FAC at 14, ¶ 62, that conclusory allegation is

23   insufficient to support equitable tolling of the statute of limitations.  Accordingly, plaintiff's

24   TILA claim is time-barred.

25          Moreover, TILA applies only to transactions in which "the party to whom credit is

26   offered or extended is a natural person, and the money, property, or services which are the

10

1  subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C.

2  § 1602(I).  As a corollary, 15 U.S.C. § 1603(1) provides that TILA "does not apply to . . .

3  [c]redit transactions involving extensions of credit primarily for business, commercial, or

4  agricultural purposes . . . ."  This inquiry is largely fact-based.  "Whether an investment loan is

5  for a personal or a business purpose requires a case by case analysis."  *Thorns v. Sundance*

6  *Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984).  This analysis requires an examination of:

7         [1] The relationship of the borrower's primary occupation to the acquisition. The
           more closely related, the more likely it is to be business purpose.
8

9         [2] The degree to which the borrower will personally manage the acquisition. The
           more personal involvement there is, the more likely it is to be business purpose.

10        [3] The ratio of income from the acquisition to the total income of the borrower.
           The higher the ratio, the more likely it is to be business purpose.
11

12        [4] The size of the transaction. The larger the transaction, the more likely it is to
           be business purpose.

13        [5] The borrower's statement of purpose for the loan.

14  *Id.* at 1419 (quoting 12 C.F.R. § 226 Supp.1, § 226.3(a)(2) (1983)).

15        For present purposes, the relevant question is whether the first amended complaint

16  contains sufficient factual material, taken as true, to establish that plaintiff's loan qualifies as a

17  personal loan under TILA, as opposed to a business loan.  Here, although plaintiff states in her

18  opposition that the subject property was her principal residence at times during the course of the

19  loan, Dckt. No. 33 at 3, that allegation is not contained in plaintiff's complaint.  In fact, the

20  amended complaint alleges that plaintiff resides in Berkeley, California, while the subject

21  property is located in Placerville, California.  FAC at 3, ¶ 1.  Therefore, plaintiff's first amended

22  complaint does not adequately allege that the loan at issue is subject to TILA.

23        Further, plaintiff's amended complaint fails to identify any specific disclosure that was

24  allegedly not provided, and does not identify any alleged factual basis upon which her TILA

25  claim can proceed.

26  ////

11

1    Accordingly, plaintiff's TILA claim must be dismissed with leave to amend her TILA

2    claim against defendants to the extent that she can cure the deficiencies addressed herein.

3                3.   California Business and Professions Code Section 17200

4    Plaintiff further alleges that defendants "have committed acts of unfair competition

5    proscribed by the [California Unfair Practices Act, Business and Professions Code Section

6    17200] including the acts and practices against Plaintiff alleged herein."  FAC at 21, ¶ 37.

7    Defendants move to dismiss the claim, arguing that plaintiff fails to allege facts constituting an

8    unlawful, unfair, or fraudulent business practice under Section 17200, and plaintiff lacks

9    standing to maintain a Section 17200 claim because she has not alleged that she lost money or

10   property as a result of any alleged unfair competition by defendants.  Dckt. No. 31 at 15-16.

11   California's Unfair Competition Law, Section 17200, prohibits any "unlawful, unfair or

12   fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Section 17200

13   incorporates other laws and treats violations of those laws as unlawful business practices

14   independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d

15   1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the

16   basis for a Section 17200 claim.  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994).

17   In addition, a business practice may be "unfair or fraudulent in violation of [section 17200] even

18   if the practice does not violate any law."  *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827

19   (2003).

20   California Business and Professions Code section 17204 limits standing to bring a

21   Section 17200 claim to specified public officials and a private person "who has suffered injury in

22   fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof.

23   Code § 17204.  "This provision requires [a plaintiff] to show that she has lost 'money or

24   property' sufficient to constitute an 'injury in fact' under Article III of the Constitution . . . , and

25   also requires a 'causal connection' between [defendant's] alleged [Section 17200] violation and

26   her injury in fact."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204–5 (9th Cir. 2010) (internal

1    citations omitted).  An absence of facts describing the money or property allegedly lost is fatal to

2    a plaintiff's Section 17200 claim.  *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1137

3    (E.D. Cal. 2010); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011) ("Proposition 64

4    requires that a plaintiff have 'lost money or property' to have standing to sue. The plain import

5    of this is that a plaintiff now must demonstrate some form of economic injury.").

6          Here, plaintiff alleges that defendants have committed acts of unfair competition

7    proscribed by Section 17200.  However, her complaint does not include any specific allegations

8    sufficient to state such a claim.  Additionally, as defendants argue, plaintiff has failed to allege

9    any damages she suffered as a result of defendants' alleged Section 17200 violation(s).

10   Accordingly, plaintiff's Section 17200 claim must be dismissed with leave to amend.

11                    4.  RESPA, 12 U.S.C. § 2605

12         With regard to her RESPA claim, plaintiff alleges only that "Defendants failed to notify

13   Plaintiff of her rights under RESPA and violat[ed] her rights in doing so"; "no Defendant has

14   lawful standing to foreclose upon [plaintiff]"; and "Defendants conspired to affect a wrongful

15   foreclosure based upon fraudulent documents . . . ."  FAC at 26, ¶ 39.  In the "factual

16   allegations" section of plaintiff's first amended complaint, plaintiff also alleges that Countrywide

17   failed to give plaintiff notice that it acquired servicing rights in violation of 12 U.S.C. § 2605(c).

18   *Id.* at 12, ¶ 47.  She further alleges that paragraph 49 of her November 3, 2011 complaint in this

19   action was intended to be a Qualified Written Request ("QWR") under RESPA and that she "has

20   not received the response to the QWR although the request was made over 60 days [ago]."  *Id.* at

21   12, ¶¶ 49-50.

22         Defendants move to dismiss, arguing that (1) as a general matter, the RESPA portion of

23   the first amended complaint contains a single paragraph alleging bare legal conclusions without

24   any allegation of what constitutes a violation of RESPA; (2) plaintiff does not allege that she

25   submitted a QWR to defendants; (3) plaintiff fails to allege any facts showing her loan account is

26   in error or what other information was sought in a QWR; (4) plaintiff fails to allege facts

                                                    13

1  establishing that defendants made any report to any consumer reporting agency; and (5) plaintiff

2  fails to identify any facts establishing any damages from any credit reporting by defendants.

3  Dckt. No. 31 at 16-17.

4  As an initial matter, as discussed above with regard to TILA, it is unclear from plaintiff's

5  amended complaint whether plaintiff's loan qualifies as a personal loan, as opposed to a business

6  loan.  RESPA is identical to TILA in that regard, as it "does not apply to credit transactions

7  involving extensions of credit . . . primarily for business, commercial, or agricultural purposes,"

8  12 U.S.C. § 2606(a), and requires an identical inquiry as the one used under TILA.  *See* 12

9  U.S.C. § 2606(b); *see also Galindo v. Financo Financial, Inc*., 2008 WL 4452344 (N.D. Cal.

10 Oct. 3, 2008) ("In evaluating whether a certain loan was primarily for business purposes under

11 RESPA, courts are to apply the same standards as are used under TILA.").  Accordingly, it

12 appears plaintiff's RESPA claims should be dismissed on that ground alone.

13 Moreover, plaintiff fails to state a valid RESPA claim.  The only RESPA claims that the

14 court can discern from plaintiff's first amended complaint are claims for violation of 12 U.S.C.

15 § 2605(c) for an alleged failure by Countrywide to give plaintiff notice that it acquired servicing

16 rights and for violation of 12 U.S.C. § 2605(e) for failing to respond to an alleged QWR.

17 a.  Notice of Loan Transfer

18 RESPA provides that when the servicer of a loan changes, the borrower is entitled to

19 notice.  12 U.S.C. § 2605(b)(1), (c)(1), 24 C.F.R. § 3500.21(d)(1)(I).  Specifically, the transferor

20 must provide notice not less than fifteen days before the effective transfer of the loan, 12 U.S.C.

21 § 2605(b)(2)(A), 24 C.F.R. § 3500.21(d)(2)(i)(A), and the transferee must provide notice not

22 more than 15 days after the date of effective transfer.  12 U.S.C. § 2605(c)(2)(A), 24 C.F.R.

23 § 3500.21(d)(2)(i)(B).

24 ////

25 ////

26 ////

1    Here, plaintiff vaguely alleges that Countrywide failed to give plaintiff notice that it

2    acquired servicing rights.  FAC at 12, ¶ 47.  However, that allegation is too conclusory to state a

3    claim under 12 U.S.C. § 2605(c) since plaintiff fails to allege any facts in connection with the

4    allegation.

5        Moreover, alleging a breach of RESPA duties alone does not state a claim under RESPA.

6    Plaintiff must, at a minimum, also allege that the breach resulted in actual damages.  *See* 12

7    U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with this section shall be liable to the

8    borrower . . . [for] any actual damages to the borrower as a result of the failure."); 24 C.F.R.

9    § 3500.21(f)(1)(i); *Cuaresma v. Deustche Bank Nat. Co.*, 2011 WL 4727805, at *5 (N.D. Cal.

10   Oct. 7, 2011); *Padilla v. One West Bank*, 2010 WL 5300900, at *6 (N.D. Cal. Dec. 20, 2010)

11   ("The plaintiff must include, at the pleading stage, a demonstration of some actual pecuniary

12   loss."); *Farias v. FCM Corp.*, 2010 WL 4806894, at *3 (S.D. Cal. Nov. 18, 2010) ("Under

13   section 2605(f)(1), plaintiff must, at a minimum, allege the 'actual damages' he suffered as a

14   result of Litton's failure to respond to his QWR.").  "Absent factual allegations suggesting that

15   Plaintiffs suffered actual damages, plaintiffs' RESPA claim is insufficiently pled and subject to

16   dismissal."  *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010); *see*

17   *also Hussein v. Wells Fargo Bank*, 2011 WL 2215815, at *3 (E.D. Cal. June 6, 2011)

18   (recommending dismissal of RESPA claim, in part, because plaintiff failed "to allege what actual

19   damages he suffered as a result of the alleged failure to respond to the QWR"); *Lemieux v. Litton*

20   *Loan Servicing*, 2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009) ("Plaintiffs have not plead

21   facts showing they suffered actual damages. Their failure to do so defeats their RESPA claim.");

22   *Garcia v. Wachovia Mortgage Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (dismissing

23   RESPA claim because plaintiff "failed to allege damages under Section 2605")).  Here, plaintiff

24   does not specify any damages resulting from an alleged failure by Countrywide to give plaintiff

25   notice that it acquired servicing rights.  Therefore, plaintiff's RESPA claim under 12 U.S.C.

26   § 2605(c) must be dismissed with leave to amend.

1          b.  Failure to Respond to QWR

2          RESPA also imposes certain disclosure obligations on loan servicers who transfer or

3  assume the servicing of a federally-related mortgage loan.  12 U.S.C. § 2605(b).  A borrower

4  may obtain such information by submitting a qualified written request or "QWR," which is

5  statutorily defined as "a written correspondence, other than notice on a payment coupon or other

6  payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to

7  identify, the name and account of the borrower; and (ii) includes a statement of the reasons for

8  the belief of the borrower, to the extent applicable, that the account is in error or provides

9  sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C.

10  § 2605(e)(1)(B); *see also* 24 C.F.R. § 3500.21(e)(2).

11          Under RESPA's § 2605(e), a loan servicer "who receives a qualified written request from

12  the borrower (or an agent of the borrower) for information relating to the servicing of such loan"

13  is required to provide the borrower with a written acknowledgment of receipt within twenty

14  days.  *Id*. § 2605(e)(1)(A).  Within sixty days of receipt of a QWR, excluding weekends and

15  holidays, the servicer must conduct an investigation; if the servicer determines that the account is

16  in error, the servicer must make appropriate corrections to the borrower's account and notify the

17  borrower of the correction in writing.  *Id*. § 2605(e)(2)(A).  If a loan servicer fails to comply

18  with the provisions of § 2605, a borrower is entitled to any actual damages as a result of the

19  failure.  *Id.* § 2605(f).

20          Here, plaintiff vaguely alleges that paragraph 49 of her November 3, 2011 complaint in

21  this action was intended to be a Qualified Written Request ("QWR") under RESPA and that she

22  "has not received the response to the QWR although the request was made over 60 days [ago]."

23  FAC at 12, ¶¶ 49-50.  However, plaintiff does not provide any facts in support of that allegation,

24  including how that amounted to a QWR or to whom it was sent.  Moreover, as noted above,

25  alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiff must, at

26  a minimum, also allege that the breach resulted in actual damages.  Here, plaintiff does not

1   specify any damages resulting from an alleged failure to respond to her purported QWR.

2   Therefore, plaintiff's RESPA claim under 12 U.S.C. § 2605(e) must be dismissed with leave to

3   amend.

4               5. <u>Constructive Fraud/ Fraudulent Inducement</u>

5         Plaintiff alleges that defendants engaged in "constructive fraud" by filing and/or

6   recording documents they knew or reasonably should have known to be false and fraudulent."

7   FAC at 21, ¶ 41.  She further alleges that defendants engaged in "fraudulent inducement," citing

8   "The Harassment Act 1997."  *Id.* at 22, ¶ 44.  Additionally, in the "factual allegations" portion of

9   the first amended complaint, plaintiff alleges that "[d]efendants filed a fraudulent and defective

10  Notice of Default on December 12, 2010."  *Id.* at 1, ¶¶ 1-2.  Plaintiff contends that "none of the

11  named Defendants are a 'person entitled to enforce' the security interest under the Notes and the

12  Deeds of Trust, as defined in California Commercial Code § 3301," and that "No legal transfer

13  of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was ever

14  effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary

15  or an authorized agent of trustee, mortgagee, or beneficiary of Plaintiff's Mortgage Note, Deed

16  of Trust or any other interest in Plaintiff's Property."  *Id.* at 12, ¶ 51; *id.* at 13, ¶ 53.  Plaintiff

17  also alleges that during the refinance process Bottini made a variety of misrepresentations on

18  behalf of Countrywide in order to induce plaintiff to accept the loan at issue.  *Id.* at 9-11, ¶¶ 36-

19  45.

20        Defendants move to dismiss both of plaintiff's fraud claims, arguing that (1) plaintiff

21  fails to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b); (2)

22  plaintiff fails to plead any misrepresentations of fact by the moving defendants since her theories

23  regarding the alleged fraudulent recording of the non-judicial foreclosure documents cannot

24  form any basis to support a misrepresentation of material fact, since the Commercial Code is

25  irrelevant, MERS is a valid beneficiary, securitization is proper, and the assignment of the deed

26  of trust was proper; (3) plaintiff does not allege that she reasonably relied on any representation

1   by the moving defendants; and (4) plaintiff does not allege that any such reliance caused her

2   legally cognizable damage.  Dckt. No. 31 at 17-22.

3          Federal Rule of Civil Procedure 9(b) requires fraud claims to be pled with particularity.

4   To state a claim for fraud, a plaintiff must plead "(a) misrepresentation; (b) knowledge of falsity

5   (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

6   resulting damage."  *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003); *see also* Cal. Civ. Code

7   §§ 1709-10.  "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be

8   stated with particularity."  Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give

9   defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

10  that they can defend against the charge and not just deny that they have done anything wrong."

11  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  In addition to the "time, place and

12  content of an alleged misrepresentation," a complaint "must set forth what is false or misleading

13  about a statement, and . . . an explanation as to why the statement or omission complained of was

14  false or misleading."  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993, n.10 (9th Cir. 1999).  The

15  complaint must also name the persons who made the allegedly fraudulent statements.  *See*

16  *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *3 (N.D. Cal. 2007) (citing *In re Glenfed,*

17  *Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (en banc)).

18         Here, plaintiff's fraud allegations lack the requisite specificity under Rule 9(b).

19  Accordingly, both of her fraud claims must be dismissed with leave to amend.

20                    6.  California Civil Code Section 2932.5

21         Plaintiff also alleges that "[t]he foreclosing entity forged assignments, unlawfully

22  recorded the forged documents and attempted to conduct an unlawful foreclosure sale."  FAC at

23  22, ¶ 47.  She "questions the authenticity of the signatory on the documents and the true identity

24  and capacity of the authorizing entity of the documents recorded in the El Dorado County

25  Recorder's office" and contends that "there is NO lawful assignment from BAC (the loan

26  originator) to any other entity prior to December 12, 2011."  *Id.* at 22, ¶ 48.  Plaintiff alleges that

18

1    "[a]s such, Defendants here have and continue to enforce a worthless document, and operate

2    with full knowledge that the documents are fraudulent and defective," and do not have "standing

3    to conduct foreclosure proceedings." *Id.*

4           Defendants move to dismiss, arguing that (1) plaintiff's claims that defendants did not

5    have authority to record a notice of default are incorrect under California's non-judicial

6    foreclosure statute and the terms of the Deed of Trust; (2) plaintiff lacks standing since she does

7    not allege facts establishing that she resides in the property; and (3) even if Civil Code section

8    2923.5 was somehow applicable, which it is not, plaintiff fails to allege facts establishing any

9    violation of that section by defendants.  Dckt. No. 31 at 22.

10          As defendants argue, California Civil Code section 2923.5(f) provides that Section

11   2923.5 applies "only to mortgages or deeds of trust described in [California Civil Code] Section

12   2924.15," and Section 2924.15 only applies "to first lien mortgages or deeds of trust that are

13   secured by owner-occupied residential real property containing no more than four dwelling

14   units."  Cal. Civ. Code §§ 2923.5(f), 2924.15(a).  "'[O]wner-occupied' means that the property is

15   the principal residence of the borrower and is security for a loan made for personal, family, or

16   household purposes."  *Id.* § 2924.15(a).

17          As discussed above, although plaintiff states in her opposition that the subject property

18   was her principal residence at times during the course of the loan, Dckt. No. 33 at 3, that

19   allegation is not contained in plaintiff's complaint; rather, the first amended complaint alleges

20   that plaintiff resides in Berkeley, California even though the subject property is located in

21   Placerville, California.  FAC at 3, ¶ 1.  Therefore, because it does not appear from plaintiff's first

22   amended complaint that the subject property is "owner-occupied," plaintiff's claim under

23   California Civil Code section 2923.5 must be dismissed with leave to amend.

24          7. <u>Unconscionability</u>

25          Finally, plaintiff alleges a claim for "unconscionability," stating that "[i]f the court, as a

26   matter of law, finds the contract or any clause of the contract to have been unconscionable at the

19

1   time it was made, the Court may refuse to enforce the contract, there the worthless, invalid and

2   fraudulent Deed of Trust in the possession of Defendants."[4]  FAC at 23, ¶ 50.  Plaintiff then cites

3   to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*.  *Id.* at 23, ¶ 52.

4   Plaintiff alleges that "based upon the lack of lawful recorded documents" and the fact that "the

5   Trust Deed is based on documents which were unlawfully and fraudulently recorded, lack of

6   adherence to regulations, civil codes, federal standard and due diligence that Defendants

7   erroneously failed to reasonably investigate prior to scheduling a Trustee Sale Defendants here

8   attempt to circumvent the law, harass Plaintiff to become unjustly enriched and steal her home."

9   *Id.* at 23, ¶ 53.

10      Defendants move to dismiss this claim, arguing that the confusing claim states no

11  additional allegations of fact and is dependent on the prior causes of action, each of which is

12  legally defective, nor does it identify any contract term that is substantively or procedurally

13  unconscionable.  Dckt. No. 31 at 23.  Further, to the extent that plaintiff's claim is based on an

14  alleged violation of the FDCPA, defendants cannot be liable since they are not debt collectors

15  within the meaning of the FDCPA.  *Id.*

16      It is unclear what plaintiff's claim for "unconscionability" is purporting to allege.  As

17  defendants note, plaintiff does not allege any specific contract term that is unconscionable.

18  Further, although plaintiff references the FDCPA, she does not allege that defendants are debt

19  collectors within the meaning of that statute and does not allege any facts that would support a

20  violation of that statute.  Therefore, plaintiff's eighth claim for relief must be dismissed with

21  leave to amend.

22  ////

23  ////

24  ─────────────────

25      [4] Although the caption in the first amended complaint indicates that the eighth cause of
    action is for quiet title, the complaint actually pleads "Unconscionability" as the eighth cause of
    action.  It appears that the caption is in error since plaintiff makes no attempt to plead a quiet
26  title claim in the first amended complaint.

III.   LEAVE TO AMEND

Although plaintiff should be granted leave to file a second amended complaint to the extent provided herein, she is admonished that such leave is not unlimited.  Plaintiff is cautioned that the court cannot refer to a prior pleading in order to make an amended complaint complete. Local Rule 220 requires that any amended complaint be complete in itself without reference to prior pleadings.  Any second amended complaint will supersede the original and the amended complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, in a second amended complaint, just as if it were the initial complaint filed in the case, each defendant must be listed in the caption and identified in the body of the complaint, and each claim and the involvement of each defendant must be sufficiently alleged.  Plaintiff's second amended complaint must include concise but complete factual allegations describing the conduct and events which underlie his claims.  The factual allegations in support of each cause of action should be specifically pled underneath that cause of action.  Finally, if plaintiff elects to file a second amended complaint in an attempt to cure the deficiencies noted above, she should take heed of the court's analysis in this order and neither include causes of action nor name defendants in a manner inconsistent with that analysis.

IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  The status (pretrial scheduling) conference currently set for April 17, 2013 is continued to August 28, 2013 at 10:00 a.m. in Courtroom No. 8.

2.  On or before August 14, 2013, the parties shall file status reports, as provided in the court's December 5, 2011 order.

Further, IT IS RECOMMENDED that:

1.  Defendants' motion to dismiss, Dckt. No. 31, be granted; and

////

////

2.  Plaintiff be granted forty-five days from the date of any order adopting this recommendation to file a second amended complaint as provided herein.  Plaintiff be directed that the second amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint" that plaintiff be admonished that failure to timely file a second amended complaint may result in a recommendation that this action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 20, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE